SAMUEL JOKICH, Plaintiff, v. UNION OIL COMPANY OF CALIFORNIA, Defendant and Third-Party Plaintiff-Appellee (J & V Mechanical Services, Inc., Third-Party Defendant-Appellant; Joseph R. Zborowski *et al.*, Third-Party Defendants).

First District (4th Division) No. 1—89—2915

Opinion filed May 30, 1991.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge and Martin D. Hoke, of counsel), for appellant.

Eric Samore, of Querrey & Harrow, Ltd., of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Third-party defendant, J & V Mechanical Services, Inc. (J & V), appeals from the entry of summary judgment for defendant/third-party plaintiff Union Oil Company (Union Oil) on count IV of Union Oil's complaint alleging the breach of a provision in a construction contract requiring J & V to procure insurance in which Union Oil is named as an additional insured. J & V contends that the trial court erred in entering summary judgment for Union Oil because the insurance clause at issue is void and unenforceable as being contrary to Illinois public policy.

In 1982, the parties entered into an agreement pursuant to which J & V was to repair an overhead crane owned by Union Oil located at its Lemont, Illinois, refinery. In the course of making the repairs, Samuel Jokich, a J & V employee, sustained serious injuries when a temporary staircase, provided and owned by Union Oil, collapsed. Jokich filed a complaint against Union Oil charging it with various violations of the Structural Work Act (Ill. Rev. Stat. 1983, ch. 48, par. 60). Union Oil filed its answer in which it denied all the material allegations of Jokich's complaint.

Thereafter, Union Oil also filed a third-party complaint against J & V for, *inter alia*, contribution (count III) and breach of contract for J & V's failure to procure insurance covering Union Oil's liability to Jokich (count IV). The record reveals that in its answers to interrogatories, J & V admitted that it directed its insurance broker to add Union Oil as an additional insured on J & V's comprehensive general liability (CGL) policy. The broker issued to Union Oil a signed "Certificate of Insurance for Contractors" showing Union Oil to be an additional insured under J & V's CGL policy. However, through some oversight or error, the policy itself did not name Union Oil as an insured.[1]

Union Oil also filed a motion for partial summary judgment on count IV, asserting that no genuine issue of fact existed as to J & V's contractual duty to obtain CGL insurance protecting Union Oil as an additional insured. J & V opposed the motion, asserting that, under

---

[1]Contained in the record is a copy of answers to interrogatories filed by the third-party defendants, J & V's insurers and broker, in which they acknowledged that J & V had requested that Union Oil be added as an additional insured on its CGL policy. They further stated that should the court determine that J & V was obligated to procure insurance for Union Oil to protect Union Oil from its own negligence in the suit by Jokich, such coverage would be provided by the insurer.

Illinois public policy, the insurance provision in the construction contract was void and unenforceable because it did not clearly and unequivocally state an intention by J & V to insure Union Oil against Union Oil's own negligence.

Following a hearing, the trial court granted Union Oil's motion for partial summary judgment on the breach of contract count. Subsequently, the court entered an order requiring J & V to defend Union Oil and to pay any judgment, up to $500,000, entered in the underlying action. The Jokich claim was settled, and pursuant to the court's order, judgment was entered against J & V in the amount of $220,278, which represented the amount Union Oil had paid in settlement of the claim and its defense costs. This appeal followed.

OPINION

The construction contract clause on which Union Oil based its claim against J & V is contained in paragraph 18 (Insurance). That paragraph provides in pertinent part:

"With respect to the operations performed under or incident to this Agreement, [J & V] further agrees to obtain and maintain insurance acceptable to [Union Oil] which is primary as to any other existing, valid and collectible insurance and except for workers' compensation, employer's liability and contractual liability names [Union Oil] as an additional insured ***. Such insurance shall include:

(a) Comprehensive General Liability Insurance covering subcontractors contingent liability, completed operations liability and products liability ***.

* * *

Further, the insurance to be carried shall be in no way limited by any limitations expressed in numbered [paragraph] 17 above nor any limitation placed on the indemnity therein given as a matter of law.

In addition to the above, if the work or any part of it is to be performed in Illinois, all such insurance shall specifically state that it covers the liability of [Union Oil] under the Illinois Structural Work Act."

Paragraph 17, referred to in paragraph 18, is an indemnification provision. It states, in relevant part:

"[J & V] agrees to protect, indemnify and hold [Union Oil] *** free and harmless from and against any and all claims, demands, and causes of action of all kinds including without limitation, claims of property, injury or death, arising out of or be-

ing in any way connected with [J & V's] performance under this agreement except for matters shown by final judgment to have been caused by the sole negligence of [Union Oil]. The indemnification provided herein shall be effective to the maximum extent permitted by applicable law. [J & V] shall be solely responsible for the defense of any and all claims, demands or suits against [Union Oil] *** including without limitation, claims by any employee of [J & V] *** even tho the claimant may allege wilful misconduct or sole negligence on the part of [Union Oil]."

J & V asserts that the injuries sustained by Jokich were caused by the sole negligence of Union Oil, which owned and provided the wooden stairs that collapsed. J & V further argues that under *Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.* (1946), 395 Ill. 429, 70 N.E.2d 604, a contractual promise to procure insurance to protect another against the protected party's own negligence, similar to an indemnity agreement, is valid and enforceable only if it clearly, specifically and unequivocally expresses the insuring party's intent to provide such coverage. J & V contends that the insurance clause at issue in this case does not clearly, specifically and unequivocally express J & V's intent to procure insurance covering Union Oil's liability for its own negligence, and is, therefore, void and unenforceable as being contrary to public policy.

■ In *Westinghouse*, the court established the rule that an indemnity contract will not be construed as indemnifying a party against its own negligence unless such a construction is required by clear and explicit language or such intention is expressed in unequivocal terms in the indemnity agreement. In 1971, the General Assembly enacted "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1971, ch. 29, par. 61) (the Act). Section 1 of the Act provides:

"With respect to *** construction [contracts,] any *** covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable."

This legislation was aimed at arresting efforts in the construction industry to contractually avoid liability for negligence. The Act was intended to further public policy requiring management in the construction industry to undertake accident prevention measures and to provide safe working conditions on construction sites. *Davis v. Commonwealth Edison* (1975), 61 Ill. 2d 494, 336 N.E.2d 881.

Section 3 of the Act provides, "[t]his Act does not apply to construction bonds or insurance contracts or agreements." (Ill. Rev. Stat.

1971, ch. 29, par. 63.) Section 3, like section 1, serves to "protect[ ] the interests of construction workers and members of the general public who may suffer injury through construction or maintenance by preserving supplemental sources of compensation for injured persons, namely insurance and indemnifying and hold-harmless agreements in [insurance contracts and] construction bonds." (*Capua v. W.E. O'Neill Construction Co.* (1977), 67 Ill. 2d 255, 260, 367 N.E.2d 669.) Thus, construction insurance contracts or construction bonds containing indemnity agreements protecting one against one's own negligence are not void under the Act. *Capua*, 67 Ill. 2d 255, 367 N.E.2d 669.

■■ An agreement in a construction contract to obtain insurance is not an agreement to indemnify prohibited by section 1 of the Act.

> "Under an indemnity agreement, the promisor agrees to assume all responsibility and liability for any injuries or damages. Under an agreement to obtain insurance the promisor merely agrees to procure the insurance and pay the premium on it. Once the insurance is obtained, the promisor bears no responsibility in the event of injury or damages, even if the insurer should breach the insurance agreement through no fault of the promisor." *Zettel v. Paschen Construction Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 617-18, 427 N.E.2d 189.

Moreover, an agreement to obtain insurance is not a contract of insurance, to which section 3 of the Act is applicable (*Zettel*, 100 Ill. App. 3d 614, 427 N.E.2d 189). The *Zettel* court noted, however, that the promisor may be required to assume the liabilities of an insurer if the promisor breaches the agreement to obtain insurance. In *Zettel*, the contractors' entitlement to recover all monies for which they could become liable in the injured parties' underlying suit was not based on the subcontractor's promise to indemnify but, rather, on the basis of the subcontractor's breach of the provision in the contract to obtain insurance. While stating that section 3 of the Act was not directly applicable to promises to obtain insurance, the *Zettel* court reasoned that because the Act permits, for the public policy reasons stated above, a contractor to obtain insurance to cover its liabilities, a promise to obtain insurance is not void as against public policy, whereas a promise to personally indemnify is void in these circumstances.

In *Bosio v. Branigar Organization, Inc.* (1987), 154 Ill. App. 3d 611, 506 N.E.2d 996, the court construed a provision requiring the contractor to furnish public liability insurance "indemnifying" the owner of the premises. Relying on *Zettel*, the court stated that the concepts of public liability insurance and indemnity are distinct. The

court held that notwithstanding the language used, the agreement was not an indemnity agreement but, rather, a valid agreement to obtain insurance.

Similarly, in *St. John v. City of Naperville* (1987), 155 Ill. App. 3d 919, 508 N.E.2d 1128, the contract at issue contained an indemnity clause requiring the contractor to indemnify the city from all losses with respect to the construction. The insurance clause required the contractor to secure insurance for contractual liability "equal to" the indemnity provision. The appellate court held that the agreement, like the one in *Zettel*, was an enforceable promise to obtain insurance, not a promise to personally indemnify the city. In neither of these cases was the *Westinghouse* rule applied or even discussed. See also *Dowling v. Otis Elevator Co.* (1989), 192 Ill. App. 3d 1064, 549 N.E.2d 866.

As noted earlier, the *Westinghouse* rule expressly states that indemnity contracts will not be construed as indemnifying a party against its own negligence absent clear and explicit language to that effect. Citing *Cox v. Lumbermens Mutual Casualty Co.* (1982), 108 Ill. App. 3d 643, 439 N.E.2d 126, the court in *Long v. Bucyrus-Erie Co.* (1983), 112 Ill. App. 3d 578, 586, 445 N.E.2d 934, explained that this rule of strict construction was adopted to ensure that a party agreeing to the "extraordinary liability of indemnifying another against his own negligence was fully aware of the extent of his liability." The *Long* court observed that passage of section 1 of the Act, expressly prohibiting the enforcement of agreements to *indemnify* another against the other's negligence in construction contracts, rendered the *Westinghouse* rule ineffective with respect to indemnification provisions in the construction industry. Since the language of the court in *Westinghouse* did not limit the rule to construction industry contracts, the rule remains applicable to indemnity provisions in other types of contracts. *Long*, 112 Ill. App. 3d 578, 445 N.E.2d 934; see *e.g.*, *Allen v. International Harvester Co.* (1991), 212 Ill. App. 3d 655.

Because an agreement to obtain insurance is fundamentally different from an agreement to indemnify, and considering the public policy favoring insurance to ensure funds adequate to satisfy claims by injured construction workers, we conclude that the *Westinghouse* rule, expressly applicable only to indemnification provisions, does not apply to the agreement to procure insurance in the case at bar.

We recognize the existence of some case law stating that the *Westinghouse* rule remains applicable to agreements to obtain insurance. *Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 392 N.E.2d 628, on which J & V primarily relies, was an appeal from a

jury verdict in a Structural Work Act case. The contractor alleged a breach by the subcontractor of its agreement to carry liability insurance naming the contractor as an additional insured. The *Svenson* court quoted the *Westinghouse* rule and then summarily stated, without expressing its reasoning or citing to any other authority:

> "Although the instant case involves an agreement to procure insurance \*\*\*, we believe the general rule as adopted in *Westinghouse* remains applicable." (74 Ill. App. 3d at 88-89.)

The *Svenson* court then found that the agreement before it did not explicitly require the subcontractor to provide insurance covering the contractor's own negligence and that no such requirement could be inferred from the facts of the case. Consequently, the court held that the agreement violated Illinois public policy as expressed in *Westinghouse*. See also *Coverdill v. Lurgi Corp.* (1986), 146 Ill. App. 3d 112, 496 N.E.2d 1007.

Although we determine that the *Westinghouse* rule is inapplicable because the insurance clause in the case at bar is neither an indemnity provision nor a contract *of* insurance but, rather, is a contract to *procure* insurance, assuming *arguendo* that the *Westinghouse* rule were applicable, the provision at issue satisfies the *Westinghouse* test that the promise to insure be clear, specific and unequivocal. In paragraph 18 of the insurance clause, J & V agreed to obtain and maintain a comprehensive general liability policy naming Union Oil as an additional insured "with respect to operations performed under or incident to" the construction agreement. The paragraph also provided that the insurance to be carried would be "in no way limited by any limitations expressed in numbered [paragraph] 17 [the indemnity provision] nor any limitation placed on the indemnity therein given as a matter of law." In paragraph 17, J & V agreed to indemnify Union Oil against all claims "except for matters shown by final judgment to have been caused by the sole negligence of [Union Oil]." Since this clause was the only limitation placed upon J & V's obligation to indemnify Union Oil, the language of paragraph 18 expressly excluding "any limitations" in paragraph 17 can only be construed to mean that the insurance policy would provide coverage for "operations performed under or incident to this Agreement," including claims arising from Union Oil's own negligence.

■ Further, the final clause in paragraph 18 specifically required that the insurance policy state that it covered the liability of Union Oil under the Illinois Structural Work Act. With respect to that clause, J & V argues that this provision is insufficient to impose an obligation to procure insurance protecting Union Oil from its own

negligence because liability under the Structural Work Act is absolute and unconditional and does not depend on a showing of negligence by Union Oil. We disagree. In *Cox v. Lumbermens Mutual Casualty Co.* (1982), 108 Ill. App. 3d 643, 647, 439 N.E.2d 126, the court stated:

> "We reject [appellant's] argument *** that a cause of action can arise under the Structural Work Act from conduct which is less than negligent. Fault of some kind is required although it may range from passive negligence to wilful misconduct."

Thus, in agreeing to provide coverage for Union Oil's liability under the Structural Work Act, J & V was agreeing to maintain insurance coverage for negligent conduct by Union Oil.

In addition, although the indemnification clause excepted indemnification for claims arising from Union Oil's sole negligence, the provision did provide that J & V "shall be solely responsible for the defense of any and all claims, demands or suits against [Union Oil] *** even though the claimant may allege wilful misconduct or sole negligence on the part of [Union Oil]." It is undisputed that irrespective of this provision, J & V did not provide Union Oil with a defense in the underlying action.

Finally, the record reveals that J & V applied for insurance naming Union Oil as an additional insured and produced a certificate issued by the broker showing, albeit mistakenly, that Union Oil was named on the policy. We believe that in addition to the clear language of the agreement, these actions serve as evidence of J & V's recognition of its obligations under the insurance clause.

In summary, we agree with the trial court's finding that the insurance clause was clear, unambiguous and enforceable in requiring J & V to procure insurance coverage for liability arising from Union Oil's own negligence. We further hold that the trial court correctly ruled that J & V breached the agreement at issue and that Union Oil was entitled to summary judgment and damages, including the amount Union Oil paid toward settlement of the claim and the defense costs it incurred in the underlying action.

For the reasons stated, the order of the trial court is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.