**WEST LAFAYETTE CORPORATION,** formerly known as E/M Corporation, Plaintiff–Appellee,

v.

**TAFT CONTRACTING COMPANY, INCORPORATED,** Defendant–Appellant.

No. 98–4145.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1999.

Decided May 10, 1999.

William D. Serritella (argued), Ross & Hardies, Chicago, IL, Francis J. Marasa, Sweeney & Riman, Chicago, IL, for E/M Corporation.

Joseph P. Postel (argued), Meachum, Spahr, Haszto, Postel & Hittle, Chicago, IL, for Taft Contracting Co., Inc.

Before POSNER, Chief Judge, and EASTERBROOK and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

Taft Contracting agreed to do some work at the premises of West Lafayette Corp., then known as E/M. The agreement provided that Taft would secure insurance for E/M's benefit and indemnify it to the extent of any shortfall in insurance. To fulfil this promise Taft relied on a special endorsement to its own insurance policy, issued by Liberty Mutual. This endorsement extended coverage to any firm for which Taft had agreed to procure insurance.

Although an automatic-coverage clause cut down on paperwork for Taft and Liberty Mutual, it caused delay when Alex

Gaines, one of Taft's employees working at E/M's premises, was injured. Gaines sued E/M (doubtless to avoid the limits on workers' compensation benefits provided by Taft) and E/M's parent, Great Lakes Chemical Corporation. E/M tendered the defense to Taft, which notified Liberty Mutual. But the insurer took its time before assuming the defense, because it had to find out whether E/M was an additional insured (that depended on the contract between E/M and Taft, which Liberty Mutual had never seen) and whether the accident was covered by the policy, if E/M was indeed insured. While waiting for Liberty Mutual to analyze the situation, E/M hired a law firm to defend the Gaines suit, and as a precaution it added Taft as a third-party defendant. In February 1997, four months after E/M notified Taft of the suit, Liberty Mutual informed E/M that it qualified as an additional insured under Taft's policy, and that Liberty Mutual therefore would defend against the Gaines suit. But Liberty Mutual also reserved the possibility that it would decline to indemnify E/M. Liberty Mutual read the policy as not covering any accident solely attributable to E/M's negligence—that is, accidents for which Taft bore no responsibility—and wanted to analyze Gaines's claim further to determine whether E/M was 100% responsible. In July 1997 Liberty Mutual withdrew its reservation of rights and assumed both defense and indemnity unconditionally. Gaines prevailed against E/M at trial; Liberty Mutual paid the judgment (which, with interest, came to about $824,000).

■ Legal expenses E/M incurred before Liberty Mutual assumed the defense remain a bone of contention. E/M insists that Taft must cover expenses; Taft responds that the responsibility belongs to Liberty Mutual. The insurer asked for leave to intervene so that all potentially-responsible parties would be at hand and the court could come to a definitive resolution. Under Illinois law (which supplies the rule of decision), Liberty Mutual is responsible for all legal fees reasonably incurred before it assumed the defense. *Cincinnati Companies v. West American Insurance Co.*, 183 Ill.2d 317, 233 Ill.Dec. 649, 701 N.E.2d 499 (1998). But E/M opposed Liberty Mutual's motion, and the district judge denied it. So far as E/M is concerned, it is Taft or nothing; E/M disavows any desire to recoup its legal expenses from Liberty Mutual. Why E/M would adopt such a self-defeating position is beyond us, but it has done so.

■ After refusing to allow Liberty Mutual into the case, the judge ordered Taft to pay E/M approximately $64,000 in legal fees and expenses. He did not write an opinion; we glean from a series of statements made in open court that the judge thought that Taft broke its promise to E/M by obtaining insurance that failed to cover accidents attributable to E/M's sole negligence. The judge did not explain why this shortcoming was the cause of E/M's legal costs or what rule of Illinois law provides for awards of legal fees in such a situation—for Illinois, like most other states, follows the American Rule on legal fees, under which each side must bear its own unless a statute or contract provides for fee shifting. See *LINC Finance Corp. v. Onwuteaka*, 129 F.3d 917, 924 (7th Cir.1997). The contract between E/M and Taft does not require the loser to pay the winner's legal expenses.

■ At this point Taft and E/M appealed. But this court noticed that the district judge had neglected to enter a final judgment under Fed.R.Civ.P. 58, and that the court had never made a final disposition of Gaines's claim against Great Lakes. Gaines had signed a release in favor of Great Lakes, which was a good reason to enter a judgment but not a substitute for action by the district court. In response to our order to file jurisdictional memoranda, both parties dismissed their appeals and asked the district court to enter a final decision. Instead of doing this, the district judge demanded to know why the judgment had not been paid and

directed Liberty Mutual, which had issued a supersedeas bond, to pay up forthwith. The judge also imposed sanctions against Taft and its lawyer for delay in payment. A new appeal by Taft, Liberty Mutual, and Taft's lawyer ensued. But lack of finality, coupled with the absence of a Rule 54(b) judgment, meant that Taft was not then required to pay and could not be penalized for delay in payment. Although a decision may be deemed final when a district court has completed its action but neglects to enter a proper judgment, see *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978); *Otis v. Chicago*, 29 F.3d 1159 (7th Cir.1994) (en banc), the dangling claim against Great Lakes blocked appeal.

■ As we said in our unpublished order dismissing the appeal, and now repeat for benefit of bench and bar, a judge's erroneous demand that third parties (Liberty Mutual and Taft's lawyer) pay a nonexistent judgment does not create finality via a bootstrap process. A sanctions order against a party—or against a party, its lawyer, and its bonding company jointly— is appealable only at the conclusion of the case. See *Cleveland Hair Clinic, Inc. v. Puig*, 104 F.3d 123 (7th Cir.1997). One can imagine cases in which the fact of collection from a third party would entitle that entity to appeal, if recoupment were unlikely, but no payment occurred here (and E/M is able to repay anyway).

■ After we dismissed the second round of appeals, the district court withdrew its sanctions orders and at last entered a final judgment, from which Taft has appealed. Let us suppose, with E/M, that the Taft–E/M contract required Taft to secure a policy that indemnified E/M even for its sole negligence, and that the Liberty Mutual policy did not do this. Both suppositions are problematic, see *Tanns v. Ben A. Borenstein & Co.*, 293 Ill.App.3d 582, 227 Ill.Dec. 974, 688 N.E.2d 667 (1st Dist.1997), but it is unnecessary to expatiate on the questions. A deficiency in Taft's performance would be important only if it injured E/M, and this shortcoming (if shortcoming it was) did not. In the end, Liberty Mutual *did* defend and indemnify E/M. According to E/M, Liberty Mutual did so only because otherwise Taft would have been on the hook in the third-party action, and Liberty Mutual then would have had to indemnify Taft. To cut out the middleman, Liberty Mutual agreed to take over E/M's defense. This seems unlikely; Liberty Mutual issued a casualty policy, not insurance for Taft's failure to keep a promise to obtain insurance. Let that pass. The reason Liberty Mutual came to E/M's defense is irrelevant. E/M contracted for, *and received*, both defense and indemnity. Because Taft delivered what it promised to deliver, it cannot be liable to E/M.

True enough, E/M incurred legal expenses while Liberty Mutual was deciding whether to defend and indemnify, but E/M does not contend that Taft promised to secure a policy from an underwriter that would make instantaneous decisions. No underwriter does this. Even if Liberty Mutual's policy covered the sole negligence of Taft's contracting partners, Liberty Mutual still would have needed some time to decide whether E/M qualified as an additional insured and whether Gaines's injury was covered. Liberty Mutual had to determine, for example, that Gaines was injured on E/M's premises (and while at work on a project within the scope of Taft's contract), rather than while on personal business or some other contractor's project. These things take time. If Liberty Mutual took too long to make these decisions and assume the defense, that's not Taft's responsibility; Taft did not promise to insure E/M against Liberty Mutual's errors. *Zettel v. Paschen Contractors, Inc.*, 100 Ill.App.3d 614, 56 Ill. Dec. 109, 427 N.E.2d 189, 191–92 (1st Dist. 1981). See also *Chicago Housing Authority v. Federal Security, Inc.*, 161 F.3d 485, 489 (7th Cir.1998); *Duffy v. Poulos Bros. Construction Co.*, 225 Ill.App.3d 38, 167 Ill.Dec. 423, 587 N.E.2d 1038, 1042 (1st

Dist.1991). Taft might be blamed for making an agreement with Liberty Mutual that led Liberty Mutual to tarry unduly, but E/M has not argued that the five-month delay between notice and assumption of the defense is "long" for the insurance business, and it has not attempted to estimate how much of any unexpected delay could be chalked up to Taft's decisions (as opposed to normal investigation by the insurer).

■ We said earlier that the district court awarded E/M approximately $64,000. Only $54,000 of this sum represents legal costs E/M incurred before Liberty Mutual assumed the defense. The other $10,000 represents the legal expenses E/M incurred in opposing Liberty Mutual's motion to intervene and opposing Taft's motion for summary judgment on the third-party claim. The district judge did not explain how fees concerning the intervention could have been assessed against Liberty Mutual consistent with the American Rule; how they may be assessed against *Taft*, a bystander on the intervention issue, is a complete mystery. Nor does the American Rule permit an award of fees on the summary judgment dispute, for the contract between Taft and E/M does not provide for fee shifting. E/M contends that this portion of the award may be sustained as a sanction against Taft for improprieties in the conduct of this litigation, even if not under the contract. All of the supposed improprieties were committed by Liberty Mutual, however; Taft is not interchangeable with its insurer, even though the same law firm represents both. At all events, the district judge did not say that he was awarding sanctions, and there is no basis for any.

REVERSED.