(No. 23727.—

THE THOMAS HOIST COMPANY, Appellant, *vs.* THE WILLIAM J. NEWMAN COMPANY *et al.* Appellees.

*Opinion filed December 10, 1936—Rehearing denied Feb. 4, 1937.*

WILSON, J., dissenting.

WETTEN, PEGLER & DALE, for appellant.

LITSINGER, HEALY, REID & BYE, (DANIEL M. HEALY, of counsel,) for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

This cause is here on leave to appeal, granted to review a judgment of the Appellate Court for the First District reversing a decree rendered by the superior court of Cook county.

Appellant, the Thomas Hoist Company, filed a bill against appellees, the William J. Newman Company, the Ready Coal and Construction Company and Michael Ready, by which it sought to enforce a trust. By agreement the case was taken for decision by the chancellor on the pleadings and exhibits without additional evidence. By the decree it was found that the contract involved in this litigation created a trust of the funds derived from the Sanitary

District of Chicago; that appellant is a *cestui que trustent* and is entitled to be paid from those funds; that appellees were guilty of a diversion of $2037.51 from the trust fund, which they are personally liable to re-pay to appellant, and that appellees had stated that they would continue thereafter to divert additional sums coming due to appellant from the trust fund, the total of which future threatened diversions amounted to $4754.19. Appellees were ordered to pay $2037.51 and costs, and in addition they were restrained from diverting, using or disbursing any of the money which the chancellor found should be paid each month to appellant. Appellees were ordered to pay appellant $679.17 per month, beginning with the month of March and continuing thereafter until the full amount of appellant's claim was paid. Each monthly installment represented ten per cent of appellant's claim, and the money was ordered paid out of money received by appellees from the sanitary district.

The Sanitary District of Chicago on September 24, 1931, made a contract with one of the appellees, the William J. Newman Company, a corporation, (hereinafter called the Newman Company,) for the construction of a part of the West Side intercepting sewer. The Newman Company began work on the sewer and continued until February 5, 1932. It then ceased work because the sanitary district did not have the money to pay the current vouchers issued on the estimates of its chief engineer. Early in 1934 the Federal government agreed, on certain conditions, to advance funds to the sanitary district to complete the sewer, but the Newman Company was unable to meet the conditions imposed. The Newman Company entered into a contract with appellee the Ready Coal and Construction Company, a corporation, (hereinafter called the Ready Company,) under date of July 16, 1934, and this is the contract involved in this suit. By its terms the Newman Company sold, assigned and transferred its contract with the sanitary dis-

trict to the Ready Company and also sold and assigned to it all the tools, plant and equipment on the site of the work and all moneys due and to become due the Newman Company for work then performed. This assignment included a $3200 hoist bought by the Newman Company from appellant and electrical wiring and equipment furnished the Newman Company on the job by the Thomas Elevator Operating Company. The electrical wiring claim amounted to $3591.66 and had been assigned to appellant. There is no dispute that the purchase price of the hoist and the claim for electrical wiring and equipment are correct and make up the total due appellant.

The Ready Company made a supplemental agreement with the sanitary district and proceeded to complete the sewer work covered by the Newman Company contract. The Ready Company received its first payment from the sanitary district on September 10, 1934. On December 2, 1932, April 1, August 1 and December 1, 1933, and on April 2, 1934, the Thomas Elevator Operating Company served a notice of claim for a sub-contractor's lien on the sanitary district. June 28, 1934, a release of this claim for lien was obtained through the efforts of William J. Newman, president of the Newman Company, during its negotiations with the Ready Company.

After reciting most of the facts stated, the contract of July 16, 1934, between the Newman and Ready Companies provides in the first section that "all moneys that may be now due and which shall hereafter become due under said contract and supplemental contract, shall, when and as paid, be deposited in a special account to be opened in such bank, in Chicago, Illinois, as Ready Co. shall designate. Nothing shall be drawn out of such account except on checks or orders signed by Michael Ready or by such person as he shall, in writing, designate." The second section provides: "None of the money so deposited shall be used for any purpose other than to pay for labor, material or other items aris-

ing under and out of said contract and the other payments hereinafter set forth, except this, that after all the things called for by said contract shall have been completed and accepted by the sanitary district, and all labor, material and other items arising under and out of said contract shall have been fully paid, Ready Co. shall receive, have and hold to its own use forever, the sum of seventy-five thousand dollars ($75,000) as full and complete compensation to it for its undertakings and obligations herein. The balance, if any, shall be paid to Newman Co. or such other person or persons, firms, corporations or associations as said Newman Co. or William J. Newman, may designate. In consideration whereof the parties hereto agree that said William J. Newman shall devote his time and attention to the supervision of the work called for by said contract with the sanitary district in like manner as if the said contract had not been assigned to Ready Co."

Section 3, after reciting that the parties further understand that the Newman Company is indebted to other persons in the sum of $46,787.59 for bills incurred in connection with the contract, one of which is a claim for $24,394.38 due to W. A. Alexander & Co., provides that the Newman Company will obtain an agreement from Alexander & Co. to extend the time of payment to August 1, 1935. It is agreed that this particular claim shall be and remain a claim against the Newman Company and shall only be paid out of any moneys that may be on hand to the credit of the Newman Company after payment of everything mentioned in the preceding section.

Section 4 provides: "It is further understood and agreed that as to the balance of the claims against Newman Co. mentioned in paragraph 3 hereof, Newman Co. agrees to obtain an agreement that they and each of them will extend the due dates and maturity of their claims as follows, to-wit: That each and every of them will agree to accept ten per cent (10%) of their claims per month, the first

payment to be made ninety (90) days after the first voucher is issued by the sanitary district, upon resumption of the work by Newman Co. and Ready Co. under said contract and supplemental contract with the sanitary district, and ten per cent (10%) of their claims monthly thereafter until paid in full in the amounts shown in said audit report, and Ready Co. agrees to sign the checks necessary to withdraw the funds to make such payments, with the understanding, however, that if, by reason of the payments so made, it shall occur that the amount which shall be paid by the sanitary district under said contract shall not, at the termination of said contract, aggregate a sufficient amount to re-pay said Ready Co., Newman Co. shall be liable for any deficiency. It being understood, however, that in no event shall Ready Co. become personally liable therefor, or for any part thereof."

Section 5 provides for the payment of $21,000 to the United States government out of the special fund, at the election of the Newman Company and William J. Newman. The Ready Company agrees to sign the necessary checks to withdraw the funds, and the Newman Company is made personally liable for any deficiency which may be advanced by the Ready Company.

By section 6 the Newman Company agrees to obtain a credit of not less than $50,000 to be used for carrying the pay-roll. The Ready Company agrees to furnish any excess funds that would be needed for such purposes, and agrees to guarantee, under certain conditions, payment of the $50,000 loan to the Newman Company.

By section 7 the Newman Company agrees to obtain an extension of time of payment of its loan from the Continental Illinois National Bank and Trust Company so that it will not mature prior to August 1, 1935. It is specifically provided that "none of the proceeds derived from the performance of said contract, and no payment thereon, shall be used to pay such indebtedness or such loans, un-

less and until out of such proceeds and payments, all indebtedness incurred by Newman Co. in connection with said work, including the payments to the United States government above mentioned, shall have been paid in full, out of said fund, and unless and until out of said fund, also, Ready Co. has been reimbursed for all sums advanced by it plus the said seventy-five thousand dollars ($75,000) which Newman Co. agrees to pay the Ready Co. as hereinafter set forth." It was then provided that the sum of $36,000 due the Continental Illinois National Bank and Trust Company for money loaned in connection with the sanitary district contract with the Newman Company should be paid at the same rate of ten per cent per month, the first payment to be ninety days after the first voucher was issued by the sanitary district, if the bank would consent to an extension of time for payment of the loan. The Ready Company agreed to sign the necessary checks which were to be drawn on the above mentioned special account.

Section 8 provides:

"The parties hereto further understand and agree that Newman Co. is indebted to various persons, firms and corporations on 'notes payable' in the sum of $56,314.04 as shown in said audit report. Newman Co. agrees to cause each of the creditors mentioned in said report and included in this aggregate, to surrender and cancel the notes now held by them and give to them, and have them accept, new notes whose maturities shall not be sooner than August 1, 1935. However, Ready Co. agrees that Newman Co. may select certain such creditors to an aggregate of $5000 whose notes need not be so surrendered, nor the time of payment extended.

"Newman Co. further agrees that it will, also, cause each of the following named creditors to extend the time of payment of indebtedness due from Newman Co. to them, to fall due not sooner than August 1, 1935, to-wit:" [Naming creditors not here involved.]

"And Newman Co., also, agrees that it will cause the creditors hereinafter, immediately named, to release Newman Co. from its indebtedness to them and transfer such claim to W. J. Newman, personally, to-wit:" [Appellant is not among those specifically referred to.]

"And the parties hereto agree that the fact that certain agreements have been made as to specific creditors, aforementioned, shall not be in any way construed to mean that Ready Co. in any way, admits that they are creditors, nor that they have any right in whatever moneys, warrants or evidences of indebtedness may be paid or given as payment under the contract between Newman Co. and sanitary district, prior to the rights of Ready Co. It is understood and agreed, between the parties hereto, that Ready Co. shall have the first and superior right, to all the moneys, warrants or other evidences of indebtedness, given under said contract between Newman Co. and sanitary district, to reimburse it for any and all advances and for seventy-five thousand dollars ($75,000) agreed to be paid as aforesaid."

Section 9 provides for the assignment by the Newman Company of all claims for damages arising out of its contract with the sanitary district, and its detailed provisions are not here important.

It is the duty of a court, when construing written contracts, to determine and give effect to the intention of the contracting parties. In arriving at this intention effect must be given to each clause and word used, without rejecting any words as meaningless or as surplusage, (*Mittel* v. *Karl*, 133 Ill. 65; *Lehndorf* v. *Cope*, 122 id. 317; 6 R. C. L. p. 837;) but where there are two clauses in a contract which are so entirely repugnant to each other that they cannot stand together, the first shall be received and the latter rejected. *Benjamin* v. *McConnel*, 4 Gilm. 536; 6 R. C. L. p. 847.

The chancellor was correct in holding that the fourth section of this contract requires payment of ten per cent of

appellant's claim by the Ready Company ninety days after receipt of its first voucher from the sanitary district, and a like amount monthly thereafter until this claim was paid in full. Section 8 deals only with claims named in it and has nothing to do with the claims named in section 4. If appellees' contention were correct that the eighth section is controlling as to all the claims previously mentioned in the entire contract, that section would thereby be made so repugnant to the fourth section that the two could not stand together.

Appellees contend that this contract provided that the Ready Company should be reimbursed for all money it advanced in connection with the contract it assumed; that all materials and labor expended after it assumed the Newman Company's contract were to be paid for and that the Ready Company was to receive its profit of $75,000 before any of the claims mentioned in the contract were to be paid. They contend that to construe this contract otherwise would be to hold that the Ready Company was personally liable to the Newman Company's creditors. We cannot agree with this contention or that such a result would follow. The intention of the appellee companies was that the claims mentioned in the fourth section of the contract were to be paid as there specified. With the exception of the Alexander Company, those persons who had contributed work and materials during the time the Newman Company performed work under its contract with the sanitary district were to be induced to release claims for liens in order that the contract might be assigned to the Ready Company and that it could proceed without embarrassment or hindrance. If appellant were not to be paid in accordance with the terms set out in the fourth section of the contract between the appellee companies, why would appellant accede to the request of William J. Newman to release its claim for lien?

The Appellate Court for the First District erred in finding that the eighth section of the contract was controlling

as to all claims mentioned in the contract, and its judgment is therefore reversed. The decree of the superior court of Cook county was correct and is affirmed.

*Judgment of Appellate Court reversed.*
*Decree of superior court affirmed.*

Mr. JUSTICE WILSON, dissenting.