(No. 48999.

RICHARD CAPUA v. W. E. O'NEIL CONSTRUCTION CO. *et al.*—(The Metropolitan Sanitary District of Greater Chicago, Appellant, v. W. E. O'Neil Construction Co. *et al.*, Appellees.)

*Opinion filed May 20, 1977.—Rehearing denied Oct. 3, 1977.*

Allen S. Lavin, of Chicago (Paul C. Sheils and James B. Murray, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (William T. Weaver and Hugh C. Griffin, of counsel), for appellees.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

Richard Capua, the plaintiff, suffered severe injuries when the scaffold on which he was standing collapsed. This happened at the Metropolitan Sanitary District's Salt Creek Water Reclamation Project, which is located on Meachem Road in Schaumberg, Illinois. He filed a suit in the circuit court of Cook County naming W. E. O'Neil Construction Company (O'Neil), S. J. Groves & Sons Company (Groves), Boynton Engineers, Inc., and the Metropolitan Sanitary District (the District) as defendants. He alleged that O'Neil and Groves were general contractors engaged in the construction of certain buildings on the District's property and that all the defendants exercised supervision and control over the work. (O'Neil and Groves contracted with the District as a joint venture.) He further alleged that the defendants violated the Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, pars. 60 through 69) by their erection of an unsafe scaffold.

The District brought a cross complaint against O'Neil and Groves and a third-party action against O'Neil and Groves, as a joint venture, praying that if the plaintiff recovered from the District that it be granted judgment for a like amount against O'Neil and Groves. The District alleged in both the cross complaint and the third-party action that O'Neil and Groves were required, under the terms of a construction bond furnished by them at the time the construction contracts were entered into, to indemnify the District against all liabilities and judgments which might be brought against the District as a result of the construction work, including liabilities and judgments arising under the Structural Work Act. The District also named Fidelity and Deposit Company and Seaboard Surety Company as defendants in its third-party complaint, alleging that Fidelity and Seaboard were the sureties under the construction bond and asking that, if

the plaintiff recovered against the District, the District be granted a judgment for a like amount against Fidelity and Seaboard.

O'Neil and Groves moved to dismiss the cross complaint and the third-party action on the ground that section 1 of "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1973, ch. 29, par. 61) (hereafter the Act) made the indemnity provision of the construction bond void. After a hearing the trial court dismissed the cross complaint and the third-party action with prejudice. Shortly thereafter a motion by Fidelity and Seaboard to dismiss the third-party complaint was also granted. The District appealed from these dismissals to the appellate court, and the appeal was transferred to this court under Rule 302(b) (58 Ill. 2d R. 302(b)). The only issue presented on this appeal is whether section 1 of the Act made void the indemnity agreements and agreements to hold harmless appearing in the construction bond.

Section 1 provides:

> "With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." (Ill. Rev. Stat. 1973, ch. 29, par. 61.)

The question of whether the section voids indemnity or hold-harmless agreements in construction bonds arises because section 3 of the Act provides that section 1 "does not apply to construction bonds or insurance contracts or agreements" (Ill. Rev. Stat. 1973, ch. 29, par. 63).

This court in *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 503, rejected the contention that section 3 created an arbitrary and irrational exception to section 1. Today, because we consider that the legislative

intendment is clear, we reject the contention that section 1 makes indemnity or hold-harmless agreements in construction bonds void.

The cross and third-party defendants (to simplify, hereafter O'Neil) contend that a construction bond represents "simply an agreement by one person (the surety) to perform or pay if the other person (the contractor) does not complete the contract" and that it is not "an agreement by the contractor's surety to pay the owner (not the contractor) for the owner's own liability for negligence or violations of the Structural Work Act." O'Neil then argues that the legislature intended the preserving effect of section 3 to be limited to the first type of construction bonds and thus only this would not be made void under section 1. Bonds containing indemnity agreements or agreements to hold harmless, as are involved here, would not escape the operation of section 1, O'Neil says, and such agreements would be void.

This argument does not persuade. If the legislature had wished to provide that indemnity or hold-harmless agreements found in construction bonds were to be void, it could simply have made no mention of construction bonds in section 3. The result would then have been that indemnity or hold-harmless agreements in construction bonds would have been void through the operation of section 1. It would be unreasonable to assume that the legislature, when it exempted construction bonds from the application of section 1, was not aware that such bonds frequently do contain indemnity or hold-harmless agreements. (See, *e.g.,* Annot., 27 A.L.R.3d 663, 675 (1969); Ill. Rev. Stat. 1975, ch. 42, par. 331.13 (the legislature requires the District under this statute to require that a contractor's bond not only insure performance but also indemnify and keep the District harmless); Ill. Rev. Stat. 1975, ch. 24, par. 8—10—13.) It is reasonable to conclude that the legislature certainly knew such agreements appear

in construction bonds and that it intended to insure that the agreements, when provided for in construction bonds, would escape the voiding operation of section 1.

This court observed in *Davis* that the legislature had shown its interest in protecting construction workers and members of the general public from injury:

"The legislature in enacting section 1 may have considered that the widespread use of these agreements in the industry may have removed or reduced the incentives to protect workers and others from injury. (See Prosser, Handbook of the Law of Torts sec. 4 (4th ed. 1971).) For example, persons having 'charge of the work' and, thus, persons liable for violations of the Structural Work Act are able to escape the consequences of this liability by requiring indemnifying agreements from, let us say, general contractors or subcontractors. Having arranged the avoidance of the burdens of liability they no longer have the same motivation 'to lessen the extent of the danger' (*Halberstadt v. Harris Trust & Savings Bank*, 55 Ill. 2d 121, 127) to the prejudice of the worker's safety and interest. Too, the members of the general public protected from dangers presented by, for example, the improper design, construction and maintenance of buildings would be obviously affected adversely if those charged with responsibility were able to avoid the consequences of liability through indemnity agreements. Viewed in this light, we consider that section 1 of the indemnity statute serves to protect workers in the industry and the public as well from dangers associated with construction work. The statute would thwart attempts to avoid the consequences of liability and thereby insure a continuing motivation for persons responsible for

construction activities to take accident prevention measures and provide safe working conditions." 61 Ill. 2d 494, 499.

This protective interest of the legislature is manifested also through section 3. That section protects the interests of construction workers and members of the general public who may suffer injury through improper construction or maintenance by preserving supplemental sources of compensation for injured persons, namely insurance and indemnifying and hold-harmless agreements in construction bonds. For example, a worker injured on a construction project may look to the owner of the building and the contractor, his employer, for compensation. However, there will be times when the worker will be unable to recover, as when the defendant is insolvent or the damages simply too large for him to satisfy. If the contractor were required by the owner to post a construction bond in which he agreed to indemnify or hold harmless the owner, the injured worker may look to the surety for satisfaction of his claim if the owner is unable to satisfy his liability. Section 1, without more, would deny the worker the possibility of recovering from the surety because it would void the indemnity or hold-harmless agreement in the construction bond. It is reasonable to conclude that the legislature, knowing that construction bonds are frequently used as a means to assure compensation for injured workers, enacted section 3 so that this potential source of compensation for injured workers would be preserved. Section 3 serves to complement section 1.

In *Davis,* this court said that section 1 may well have been intended by the legislature to protect the construction worker and the general public from suffering construction-related injuries by encouraging accident-prevention measures. Today we observe that section 3 well may have been intended by the legislature to protect construction workers or members of the general public

who have suffered construction-related injuries by allowing them recovery against construction-bond sureties. As can be seen, sections 1 and 3 are harmonious; they evidence a legislative intendment to protect the interests of the construction worker and the general public.

For the reasons stated, the judgment of the circuit court is reversed.

*Judgment reversed.*