Donald P. LULICH, Plaintiff,

v.

The SHERWIN–WILLIAMS COMPANY,
a corporation, Defendant.

The SHERWIN–WILLIAMS COMPANY,
a corporation, Third–Party Plaintiff,

v.

FRED BERGLUND & SONS, INC.,
Third–Party Defendant.

No. 89 C 1707.

United States District Court,
N.D. Illinois, E.D.

Sept. 15, 1992.

Richard L. Rumsey, Anesi, Ozmon & Rodin, Ltd., Chicago, Ill., for plaintiff.

William D. Serritella and Raymond Hugo Groble, III, Ross & Hardies, P.C., Chicago, Ill., for third-party plaintiff.

John A. Hiskes, Michael Jay Marovich, Buikema, Hiskes, Dillner, O'Donnell & Marovich, Ltd., South Holland, Ill. and Richard G. Howser, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., for third-party defendant.

## ORDER

NORGLE, Senior District Judge.

Before the court is third-party plaintiff Sherwin–Williams Company's ("Sherwin–Williams") motion for summary judgment. For the following reasons, the motion is granted.

## FACTS

In May of 1987, Sherwin–Williams contracted with Fred P. Berglund & Sons, Inc. ("Berglund") for the construction of a boiler house on an industrial facility owned by Sherwin–Williams.[1] Donald Lulich ("Lulich"), an individual employed by Berglund, was injured while working at the Sherwin–Williams facility when a scissors-lift he ascended rolled into a trench and toppled. Lulich subsequently filed suit against Sherwin–Williams to recover for injuries purportedly sustained from his fall, alleging Illinois common law negligence and violation of the Illinois Structural Work Act, Ill.Rev.Stat. ch. 48, ¶ 69 (1991). On May 17, 1991, Sherwin–Williams filed a third-party complaint against Berglund for statutory contribution (Count I) and breach of contract (Count II). On May 11, 1992, this court entered summary judgment in favor of Sherwin–Williams with respect to the underlying lawsuit filed by Lulich. 792 F.Supp. 1106. On July 8, 1992, Sherwin–Williams filed the instant motion for summary judgment under Rule 56(b) of the Federal Rules of Civil Procedure with respect to Count II of its third-party complaint.[2]

The second count in Sherwin–Williams' amended third-party complaint, which seeks restitution from Berglund of all expenses incurred by Sherwin–Williams in the defense of the underlying action brought by Lulich, is based on Berglund's alleged breach of two contractual provisions. The first of these provisions is found in a document entitled "Contractors Agreement (PD–24)" (the "Contractors Agreement"). The Contractors Agreement, entered into by Sherwin–Williams with Berglund, generally governed the relationship between the parties in connection with the various construction work to be performed by Berglund, including the work in which Lulich was engaged at the time of his accident. Paragraph 4 of the Contractors Agreement provides, in relevant part, that Berglund keep in force, to the satisfaction of Sherwin–Williams, "at all times during the performance of the work referred to above, Comprehensive General Liability Insurance with Bodily Injury and Property Damage limits of not less than $2,000,000...." In addition to the Contractors Agreement, the parties also entered into a contract entitled "Contract Documents and Specifications Boiler House Structural and Architectural Construction" (the "Contract Documents"). This contract was modified by the "Supplementary General Conditions" (the "Supplement").

Article 11.1 of the Supplement provides the second provision upon which Sherwin–Williams has based its breach of contract claim. Article 11.1 states "[t]he Contractor shall keep in force, at all times during the performance of the work ... Comprehensive General Liability Insurance, including but not limited to ... *Owners* [sic] and Contractor's Protective Liability Insurance...." (emphasis added). Sherwin–Williams' motion for summary judgment is based on Berglund's failure to procure general liability insurance coverage for Sherwin–Williams, which Sherwin–Williams claims was prescribed by the Contractors

---

1. The facts are taken from the depositions and documents in the record as well as the statements of material facts the parties supplied in accordance with Local Rules 12(m) and 12(n).

2. The entry of summary judgment in favor of Sherwin–Williams against Lulich rendered moot Sherwin–Williams' claim of statutory contribution against Berglund.

Agreement and the Contract Documents as modified by the Supplement. Berglund responds that none of these agreements contained any contractual obligation to provide insurance coverage for Sherwin–Williams, but that such agreements merely required Berglund to obtain insurance covering itself for its own personal liability. Additionally, Berglund claims that the contract provisions purporting to require the procurement of insurance for Sherwin–Williams arise under the indemnification provision of the Contract Documents and as such are void against public policy.

## DISCUSSION

■ Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Capital Options Invs., Inc. v. Goldberg Bros. Commodities, Inc.*, 958 F.2d 186, 188 (7th Cir.1992). A plaintiff cannot rest on mere allegations of a claim. *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988). Although all reasonable inferences are drawn in favor of the party opposing the motion, *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir.1992), a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991). Nor will some metaphysical doubt suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Rather, a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving

party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

■ In general, "[c]ontract interpretation is a subject particularly suited to disposition by summary judgment." *Metalex Corp. v. Uniden Corp. of America*, 863 F.2d 1331, 1333 (7th Cir.1988). Summary judgment is appropriate if the pertinent provisions of a contract are unambiguous and contain no uncertain terms. *Id.; see also Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 603 (7th Cir.1989). Interpretation of an unambiguous contract is a question of law for the court, and summary judgment based on the plain meaning of the contract is appropriate regardless of whether a party claims some other intent when the contract was drafted. *Samuels v. Wilder*, 871 F.2d 1346, 1351 (7th Cir. 1989); *City of Clinton, Ill. v. Moffitt*, 812 F.2d 341, 342 (7th Cir.1987). However, if a court finds that a contract is ambiguous, "the contract's meaning becomes a fact question for the trier-of-fact." *Metalex*, 863 F.2d at 1333.

■ Under Illinois law, a contract is ambiguous "only if it is *'reasonably* and *fairly* susceptible to more than one meaning.' " *Metalex*, 863 F.2d at 1334 (quoting *Lenzi v. Morkin*, 116 Ill.App.3d 1014, 72 Ill.Dec. 414, 416, 452 N.E.2d 667, 669 (1983), *aff'd*, 103 Ill.2d 290, 82 Ill.Dec. 644, 469 N.E.2d 178 (1984)) (emphasis added by *Metalex* court). As stated by the Illinois Supreme Court, a contract is unambiguous on its face when both the meaning of the instrument and the intention of the parties may be discerned from the face of the document without the assistance of any parol evidence or any other extrinsic aids. *Radowski v. Lucente*, 104 Ill.2d 317, 84 Ill.Dec. 654, 657, 472 N.E.2d 791, 794 (1984). When determining whether a contract is unambiguous, the terms of the contract should be given their natural and ordinary meaning. *Dribeck Importers v. Heileman Brewing Co.*, 883 F.2d 569, 573 (7th Cir.

1989). Applying the standards of contract interpretation cited above leads this court to agree with Sherwin–Williams that Berglund was obligated to obtain comprehensive general liability insurance coverage for Sherwin–Williams.

Sherwin–Williams has alleged that the plain language of the Contractors Agreement, the Contract Documents, and the Supplement requires Berglund to acquire liability insurance coverage for Sherwin–Williams. The language contained in paragraph 4 of the Contractors Agreement is too general to advance this allegation; the only duty clearly established by paragraph 4 is Berglund's obligation to keep in force general liability insurance satisfactory to Sherwin–Williams. However, the insurance requirement of Article 11.1 of the Supplement states in part: "the Contractor [Berglund] shall keep in force, at all times during the performance of the work ... Comprehensive General Liability Insurance, including, but not limited to, ... Owners [Sherwin–Williams] ... Protective Liability Insurance...." Although Berglund asserts that it had no contractual duty to procure liability insurance coverage for Sherwin–Williams, the uncontroverted language of Article 11.1 does not support that argument, and Berglund's assertion does not give rise to any alternative interpretation.

An interpretation of a contract that gives reasonable meaning to all its terms is preferred to an interpretation that leaves some terms to no effect. *Thomas Hoist Co. v. Newman Co.*, 365 Ill. 160, 6 N.E.2d 171 (1937); *Franklin Life Ins. Co. v. Commonwealth Edison Co.*, 451 F.Supp. 602, 615 (S.D.Ill.1978). The interpretation sought by Berglund would render no meaning to the Supplement's clarification that comprehensive general liability insurance include owner's protective liability insurance. The plain language of the Supplement is not subject to varying interpretations, and accordingly, this court cannot ascribe more than one meaning to such language. Giving the terms of the Supplement their natural and ordinary meaning, Berglund was to keep in force, at all times during the performance of its work, liability insurance coverage for Sherwin–

Williams sufficient to protect Sherwin–Williams from the very type of claim brought against it by Lulich.

In addition to denying its contractual obligation to procure liability insurance for Sherwin–Williams, Berglund also contends that such an obligation would require Berglund to acquire insurance covering its own negligence and would consequently be void as against public policy under the Illinois Indemnification Act. Ill.Rev.Stat., ch. 29, ¶ 61. Section 1 of the Indemnification Act provides:

INDEMNIFICATION OF PERSON FROM PERSON'S OWN NEGLIGENCE–EFFECT–ENFORCEMENT.

With respect to contracts or agreement, either public or private, for the construction, alteration, repair, or maintenance of a building, structure, highway bridge, viaduct or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person *from that person's own negligence is void as against public policy and wholly unenforceable.*

Ill.Rev.Stat., ch. 29, ¶ 61 (emphasis added).

Section 1 of the Indemnification Act serves to protect construction workers and the general public from construction-related injuries by encouraging accident prevention measures. *Capua v. W.E. O'Neil Constr. Co.*, 67 Ill.2d 255, 260, 10 Ill.Dec. 216, 367 N.E.2d 669 (1977). The statute voids, as against public policy, indemnification provisions in construction contracts exculpating an entity from liability for its own negligence. Article 4.18.1 of the Contract Documents provided that Berglund indemnify Sherwin–Williams from all claims, damages, losses and expenses caused by Sherwin–William's own negligent acts or omissions. Both Sherwin–Williams and Berglund concede that the indemnification provision contained in Article 4.18.1 is unenforceable pursuant to Section 1 of the Act. At issue is whether Article 11.1 of the Supplement, requiring Berglund to furnish comprehensive general liability insurance, is similarly unenforcea-

ble as an indemnification provision prohibited by the Indemnification Act.

Sherwin–Williams' original third-party complaint based its breach of contract claim on Article 11.1.3 of the Contract Documents, which specifically required Berglund to purchase insurance that would cover Berglund's personal liability under article 4.18.1 of the Contract Documents. This court previously held Article 4.18.1 to be void as against public policy under section 1 of the Indemnification Act and the requirement of Article 11.1.3 to be likewise void and unenforceable. However, as Sherwin–Williams has identified in its first amended third-party complaint, Article 11.1.3 was replaced with Article 11.1 of the Supplement. The Supplement replaced the language that required Berglund to obtain insurance covering its indemnification liability with language requiring Berglund to maintain comprehensive general liability insurance coverage, including coverage for Sherwin–Williams.

Not all attempts to shift responsibility are void as against public policy, and Illinois courts have distinguished agreements that require a party to procure insurance against indemnification provisions from agreements that require a party to furnish general liability insurance. *Bosio v. Branigar Org., Inc.*, 154 Ill.App.3d 611, 107 Ill.Dec. 105, 506 N.E.2d 996 (1987); *Zettel v. Paschen Contractors, Inc.*, 100 Ill. App.3d 614, 56 Ill.Dec. 109, 427 N.E.2d 189 (1981); *Rome v. Commonwealth Edison Co.*, 81 Ill.App.3d 776, 781, 36 Ill.Dec. 894, 898, 401 N.E.2d 1032, 1036 (1980). In *Zettel*, the court considered a provision in which a subcontractor agreed to secure insurance to provide indemnity for the owner, the architect, and the contractor for all losses arising out of a construction project. The court distinguished between a promise to obtain insurance and a promise to personally indemnify another party, stating, "Under an indemnity agreement, the promisor agrees to assume all responsibility and liability for any injuries or damages. Under an agreement to obtain insurance the promisor merely agrees to procure the insurance and pay the premium on it." Following the logic of the *Zettel* court, a party

that contracts to obtain insurance coverage for another does not by such contract become an insurer. The promisor's obligation ends with the procurement of the insurance, and the promisor bears no responsibility to the promisee in the event of injury or damages.

Berglund has argued that this court should follow the decision reached in *Shaheed v. Chicago Transit Authority*, 137 Ill.App.3d 352, 92 Ill.Dec. 27, 484 N.E.2d 542 (1985). In *Shaheed*, a third-party complainant sought damages against a subcontractor for the breach of contract to maintain insurance. Clause 3 of the agreement between the parties obligated the subcontractor to cause a contractual liability or hold harmless endorsement to be issued by the insurance company insuring all of the subcontractor's indemnity obligations under that agreement. *Shaheed*, 137 Ill. App.3d 352, 363, 92 Ill.Dec. 27, 484 N.E.2d 542. Clause 5 of the contract, which did not refer to the requirement to maintain insurance, provided that the subcontractor indemnify and hold harmless the contractor from any loss, damage, or liability. In construing the contract, the *Shaheed* court found that clause 5 was void under section 1 of the Indemnification Act as a promise to indemnify another from that person's own negligence. *Shaheed*, 137 Ill.App.3d 352, 364–5, 92 Ill.Dec. 27, 484 N.E.2d 542. The court distinguished *Zettel* by noting that the agreement in that case was one to procure insurance against claims brought under the Structural Work Act, and was not one insuring an indemnity provision contrary to the Indemnification Act. *Shaheed*, 137 Ill.App.3d 352, 365, 92 Ill.Dec. 27, 484 N.E.2d 542.

This court relied on the *Shaheed* opinion when it previously granted Berglund's motion to dismiss count II of Sherwin–Williams' original third-party complaint. As previously mentioned, Sherwin–Williams' original complaint sought relief based on Berglund's contractual indemnification. Following *Shaheed*, this court dismissed Sherwin–Williams' complaint, stating that "[a]rticle 11.1.3 [of the Contract Documents, as unamended by the Supple-

ment] would require Berglund, in effect, to purchase indemnity insurance to cover obligations which the statute prohibits, namely '... to indemnify or hold harmless another person from that person's own negligence.'" *Lulich v. Sherwin–Williams Co.*, No. 89 C 1707 (N.D.Ill. March 12, 1991). While *Shaheed* was dispositive of the original third-party complaint, in light of Sherwin–Williams's amended count II and its emphasis on Article 11.1 of the Supplement, the *Shaheed* opinion is inapposite to the facts presently before this court. Sherwin–Williams' amended third-party complaint does not, like the original, seek contractual indemnification from Berglund. Rather, Sherwin–Williams seeks damages for Berglund's failure to obtain the specific general liability insurance coverage contracted for in the Supplement. In its response to the present motion, Berglund has erroneously focused on Article 11.1.3 of the Contract Documents, which was deleted and replaced by Article 11.1 of the Supplement. Given the inapplicability of the prohibited Article 11.1.3, Berglund's reliance on *Shaheed* is not persuasive.

 The provision of Article 11.1 of the Supplement, which requires Berglund to obtain comprehensive general liability insurance, including, Sherwin–Williams' protective liability insurance, is not void under Section 1 of the Indemnification Act because Section 1 applies to indemnification agreements and not to agreements for the procurement of insurance. Furthermore, Article 11.1 does not violate the public policy concerns embodied in the Indemnification Act, because an agreement requiring a contractor to provide insurance protecting the owner also protects the interests of the construction worker and the general public by reserving a potential source of compensation for injured workers. *Capua v. W.E. O'Neil Constr. Co.*, 67 Ill.2d 255, 10 Ill. Dec. 216, 367 N.E.2d 669 (1977); *Bosio v. Branigar Org., Inc.*, 154 Ill.App.3d 611, 107 Ill.Dec. 105, 506 N.E.2d 996 (1987). Pursuant to the Supplement, Berglund was to procure and maintain insurance protecting Sherwin–Williams from loss or liability by reason of personal injuries. Both parties acknowledge that no such insurance coverage was provided. As noted by the *Zettel* court, "a person breaching an agreement to obtain liability insurance is liable for all resulting damages including the amount of judgments against the promisee and the costs of defense." *Zettel*, 100 Ill. App.3d at 620, 56 Ill.Dec. at 113, 427 N.E.2d at 193. Accordingly, Sherwin–Williams is entitled to recoup the costs of its defense of the underlying action, including attorneys' fees, not to exceed the amount of the applicable coverage that the parties had agreed would be provided.

## CONCLUSION

For the reasons stated above, Sherwin–Williams' motion for summary judgment on Count II of its first amended third-party complaint is granted.

IT IS SO ORDERED.