NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the opinion

to request a rehearing. Also, opinions are subject to modification, correction or withdrawal at

anytime prior to issuance of the mandate by the Clerk of the Court. Therefore, because the

following slip opinion is being made available prior to the Court's final action in this matter,

it cannot be considered the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of Decisions in the Official

Reports advance sheets following final action by the Court.

                                    

              Docket No. 80383--Agenda 24--September 1996.

     CURTIS BRAYE v. ARCHER-DANIELS-MIDLAND COMPANY, Appellant (All

                         Tri-R, Inc., Appellee).

                     Opinion filed February 6, 1997.

     JUSTICE McMORROW delivered the opinion of the court:

     This interlocutory appeal arises from two questions which were

certified by the circuit court pursuant to Supreme Court Rule 308

(155 Ill. 2d R. 308). First, we are asked to determine whether the

liability cap provided to an employer who has paid an injured

employee's workers' compensation benefits (Kotecki v. Cyclops

Welding Corp., 146 Ill. 2d 155 (1991)) may be waived by contract.

We also are asked to determine whether the alleged contractual

language at issue in the case at bar operates as a waiver of the

Kotecki cap or whether it is void for being in violation of the

Construction Contract Indemnification for Negligence Act (740 ILCS

35/0.01 et seq. (West 1994)).

                                BACKGROUND

     On June 12, 1991, the plaintiff, Curtis Braye, sustained

injuries after falling from a motorized scaffold, while working as

a welder on a construction site at Archer-Daniels-Midland's (ADM)

manufacturing facility in Decatur, Illinois. Braye filed a workers'

compensation claim against his employer, All Tri-R, Inc., which was

settled for $172,000. In 1993, Braye filed an action against ADM

alleging violations of the Structural Work Act (Ill. Rev. Stat.

1989, ch. 48, par. 60 et seq. (subsequently 740 ILCS 150/0.01 et

seq. (West 1992)) (repealed by Pub. Act 89--2, eff. February 14,

1995)), and common law negligence.

     In February of 1994, ADM filed its answer to Braye's complaint

as amended, denying the allegations. ADM also filed a third-party

action against All Tri-R, seeking contribution pursuant to the

Joint Tortfeasor Contribution Act (Ill. Rev. Stat. 1989, ch. 70,

par. 301 et seq.). In its initial prayer for relief, ADM sought

contribution in an amount commensurate with All Tri-R's relative

degree of culpability in proximately causing Braye's injuries, but

not to exceed All Tri-R's maximum liability under the Workers'

Compensation Act (820 ILCS 305/1 et seq. (West 1992)), consistent

with this court's decision in Kotecki v. Cyclops Welding Corp., 146

Ill. 2d 155 (1991). In Kotecki, this court held that an employer's

contribution liability to a third-party plaintiff is limited to the

amount of workers' compensation benefits paid to the injured

employee. Kotecki, 146 Ill. 2d 155.

     In March of 1995, ADM filed a motion for leave to amend its

request for contribution from All Tri-R, now seeking an amount

commensurate with All Tri-R's relative degree of culpability and no

longer limited by All Tri-R's workers' compensation liability. ADM

premised its motion to amend on a purchase order which allegedly

governed the work in question. The purchase order states, in

pertinent part:

               "If [All Tri-R's] work under the order involves

          operations by [All Tri-R] on the premises of [ADM] or one

          of its customers, [All Tri-R] shall take all necessary

          precautions to prevent the occurrence of any injury to

          person or damage to property during the progress of such

          work and, except to the extent that any such injury or

          damage is due solely and directly to [ADM's] or its

          customer's negligence, as the case may be, [All Tri-R]

          shall pay [ADM] for all loss which may result in any way

          from any act or omission of [All Tri-R], its agents,

          employees or subcontractors."

     ADM maintained that because this language evidenced All Tri-

R's intent to remain liable for all loss resulting from All Tri-R's

own negligence, ADM should be permitted to file its amended request

for contribution from All Tri-R without the limitation announced in

Kotecki. ADM argued that the purchase order established that All

Tri-R had bargained away any potential limit on its contribution

liability in a third-party action, including the limit set forth in

Kotecki. Additionally, ADM urged the circuit court to follow

Herington v. J.S. Alberici Construction Co., 266 Ill. App. 3d 489

(1994), where the court held that an employer is free to forgo the

protection of the Kotecki cap by virtue of a contract which

preceded the litigation.

     All Tri-R responded to ADM's motion to amend by arguing that

the purchase order could be read as allowing indemnity for ADM's

own negligence and therefore was void and unenforceable under the

Construction Contract Indemnification for Negligence Act

(Indemnification Act) (740 ILCS 35/0.01 et seq. (West 1994)). All

Tri-R maintained that the purchase order was at best ambiguous. As

such, All Tri-R argued, the ambiguity must be construed against

ADM, which allegedly drafted the purchase order in question.

Finally, All Tri-R argued that even if the purchase order did not

violate the Indemnification Act, Herington was decided incorrectly.

     Following a hearing on the motion, the circuit court concluded

that the language of the purchase order did not violate the

Indemnification Act. The court also determined that Herington

controlled its ruling because Herington recognized that an employer

may waive its right to assert Kotecki as a defense to a third-party

action for contribution. Accordingly, the court allowed ADM to file

an amended third-party complaint seeking contribution from All Tri-

R in an amount commensurate with its relative degree of

culpability. The court then certified the following questions

pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308):

               "Whether the liability cap in third-party actions

          provided to an employer who pays an injured employee's

          worker['s] compensation benefits may be waived by

          contract, and if so, whether a contract which states:

                    `If [All Tri-R's] work under the order

               involves operations by [All Tri-R] on the premises

               of [ADM] or one of its customers, [All Tri-R] shall

               take all necessary precautions to prevent the

               occurrence of any injury to person or damage to

               property during the progress of such work and,

               except to the extent that any such injury or damage

               is due solely and directly to [ADM's] or its

               customer's negligence, as the case may be, [All

               Tri-R] shall pay [ADM] for all loss which may

               result in any way from any act or omission of [All

               Tri-R], its agents, employees or subcontractors[ ]'

          is an enforceable contract for contribution."

     The appellate court answered the first question in the

affirmative, holding that an employer is free to decide whether to

forgo the Kotecki limit by virtue of a contract. 276 Ill. App. 3d

1066, 1070. However, the appellate court went on to find that the

language of the purchase order was void and unenforceable because

it violated the Indemnification Act. 276 Ill. App. 3d at 1070-71.

We granted ADM's petition for leave to appeal. 155 Ill. 2d R.

315(a).

                                 ANALYSIS

                                     I

     We first address the question of whether the liability cap on

an employer's contribution liability in a third-party action may be

relinquished by contract. ADM submits that this court should adhere

to the holding and rationale in Herington v. J.S. Alberici

Construction Co., 266 Ill. App. 3d 489 (1994). In Herington, the

court held that in the context of a third-party action, an

employer's promise to pay for liability attributable to its own

negligence operated as a waiver of the limitation set forth in

Kotecki. Accord Liccardi v. Stolt Terminals (Chicago), Inc., 283

Ill. App. 3d 141 (1996). The court reasoned that because an

employer may waive the affirmative defense contained in section 11

of the Workers' Compensation Act in a direct action initiated by an

employee (Doyle v. Rhodes, 101 Ill. 2d 1 (1984)), it may also waive

the liability limitation announced in Kotecki in anticipation of

third-party litigation. ADM maintains that Herington does not

undermine Kotecki because it is consistent with the notion that an

employer should be able to contract for its potential liability.

ADM also contends that the rule in Herington advances two important

public policies: the policy which favors holding parties

responsible for their contractual obligations, and the policy which

favors the allocation of liability according to the parties'

relative fault in order to promote workplace safety.

     All Tri-R counters, without citation to relevant authority,

that the rationale of Herington is flawed because the limitation on

an employer's contribution liability set forth in Kotecki cannot be

equated with an affirmative defense. All Tri-R further argues that

the rule announced in Herington contravenes the Workers'

Compensation Act as interpreted by Kotecki. Moreover, All Tri-R

contends that Herington was decided erroneously because the

Workers' Compensation Act is the sole measure of an employer's

liability, regardless of an employer's attempt to modify its rights

under the Act. See 820 ILCS 305/11 (West 1994).

     We reject All Tri-R's argument that the Kotecki cap cannot by

waived by contract. In Doyle v. Rhodes, 101 Ill. 2d 1 (1984), this

court was called upon to determine whether the immunity of an

employer from an action at law by an injured employee provided by

sections 5(a) and 11 of the Workers' Compensation Act also bars an

action for contribution against the employer by a third party who

was partially responsible for the employee's injury. Section 11

provides, in relevant part, that the Act "shall be the measure of

the responsibility of any employer ***." 820 ILCS 305/11 (West

1994). This court determined that section 11 is an affirmative

defense to a common law action brought by an employee for a work-

related injury. Doyle, 101 Ill. 2d at 10; Robertson v. Travelers

Insurance Co., 95 Ill. 2d 441 (1983). As such, an employer's

potential for tort liability exists unless and until the defense of

the Workers' Compensation Act is established. Doyle, 101 Ill. 2d at

10-11. The court then construed the Contribution Act and held that

the legislature intended the Contribution Act to apply to an

employer in a third-party action regardless of an employer's

immunity from a direct action by the employee. Doyle, 101 Ill. 2d

at 13-14.

     We agree with ADM's contention that Doyle is relevant to our

inquiry insofar as it recognized that an employer has the option to

determine whether to use the Workers' Compensation Act as a shield

from an action brought outside of the statutory scheme contemplated

by the Workers' Compensation Act. In the context of a direct action

brought by an employee, an employer generally may be expected to

avail itself of the protection afforded by the Workers'

Compensation Act. Geise v. Phoenix Co. of Chicago, Inc., 159 Ill.

2d 507, 514 (1994). However, an employer may choose not to invoke

the Act based on its expectation that the plaintiff's common law

negligence claim will fail. Geise, 159 Ill. 2d at 514. This choice

would enable the employer to evade liability completely. Geise, 159

Ill. 2d at 514; see, e.g., Rhodes v. Industrial Comm'n, 92 Ill. 2d

467 (1982) (employee's recovery in a common law action barred

further recovery from the employer under the Workers' Compensation

Act).

     ADM maintains that just as an employer has the right to decide

whether to avail itself of the protections of the Workers'

Compensation Act in a direct action brought by an employee, the

employer also has the option to decide, in advance of potential

litigation by injured employees, whether to avail itself of the

Act's protections in a third-party action for contribution. In

essence, ADM simply maintains that if an employer determines it

advantageous to promise to assume liability for its own negligence,

it may not avoid its contractual agreement if it later perceives

the promise to be detrimental. According to ADM, neither the

Workers' Compensation Act nor our decision in Kotecki prohibits an

employer from entering into an agreement prior to the commencement

of litigation to assume full liability for damages commensurate

with its relative degree of fault. We agree.

     Initially, we note that the Workers' Compensation Act does not

expressly preclude the operation of the basic tenets of contract

law where a workers' compensation claim is involved. Fredericks v.

Liberty Mutual Insurance Co., 255 Ill. App. 3d 1029 (1994). The

Workers' Compensation Act contemplates a trade off between an

employer and an employee in which the employee relinquishes his or

her right to recover damages for work-related injuries under a

common law negligence theory, while the employer forgoes common law

defenses in exchange for liability that is fixed according to a

statutory scheme. Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 180-81

(1978). This statutorily imposed bargain promotes the fundamental

purpose of the Act, which is to "afford protection to employees by

providing them with prompt and equitable compensation for their

injuries." Kelsay, 74 Ill. 2d at 180-81.

     The equilibrium contemplated by the Workers' Compensation Act

may be disrupted when an employer pays benefits to an injured

employee and later is sued by a third party for contribution in an

action involving the same injured employee. Kotecki, 146 Ill. 2d

155. In Kotecki, this court restored the balance of the Workers'

Compensation Act, in light of the Joint Tortfeasor Contribution Act

(740 ILCS 100/1 et seq. (West 1992)), by weighing the competing

interests of the employer as a participant in the workers'

compensation system, and the equitable interest of the third-party

plaintiff in not being forced to pay more than its established

fault. Kotecki, 146 Ill. 2d at 164.

     Kotecki confirmed Doyle's conclusion that "a negligent

employer is liable for contribution to a third party, regardless of

the Workers' Compensation Act." (Emphasis in original.) Kotecki,

146 Ill. 2d at 160. A third party's right of contribution exists

from the time that the person seeking recovery is injured. Rakowski

v. Lucente, 104 Ill. 2d 317 (1984). In holding that a third-party

plaintiff may seek contribution limited only by the amount of

workers' compensation benefits paid by the employer, this court

upheld a third-party defendant's right to contribution, while

preserving the employer's important right to rely on the protection

of the Workers' Compensation Act. Lannom v. Kosco, 158 Ill. 2d 535,

540 (1994).

     Our concern for the employer in Kotecki centered on "whether

the employer will be forced to pay too much, thereby losing the

protection that the Workers' Compensation Act is supposed to

provide." (Emphasis added.) Kotecki, 146 Ill. 2d at 163. The law is

clear that an employer may not be compelled to forgo the

protections of the Workers' Compensation Act. However, the relief

sought by ADM in this case is premised upon an allegation that All

Tri-R voluntarily decided to forgo the protection of the Act by

virtue of its promise. We determine that nothing in Kotecki

prohibits an employer from agreeing to remain liable for its pro

rata share of damages proximately caused by its negligence,

notwithstanding the employer's ability to avail itself of the

Kotecki cap on its liability.

     We further conclude that neither the language of the Workers'

Compensation Act nor public policy prohibits our determination that

an employer may waive the protection of the Workers' Compensation

Act. Section 23 of the Workers' Compensation Act provides that

"[n]o employee *** shall have power to waive any of the provisions

of this Act in regard to the amount of compensation which may be

payable to such employee *** except after approval by the

Commission ***." (Emphasis added.) 820 ILCS 305/23 (West 1994). In

enacting section 23 of the Workers' Compensation Act, the General

Assembly made an inherent determination regarding the relative

bargaining power between an employer and an employee. See generally

Checker Taxi Co. v. Industrial Comm'n, 343 Ill. 139 (1931)

(employer could not escape workers' compensation liability by

virtue of a contract with its employee). No similar prohibition

exists with respect to an employer's power to forgo its rights

under the Act.

     This court held in Board of Education v. Chicago Teachers

Union, Local No. 1, 86 Ill. 2d 469 (1981), that the Workers'

Compensation Act does not prevent parties from agreeing to

supplement the benefits conferred by the Act. In Board of

Education, an employee sought to enforce provisions of a

collective-bargaining agreement between the Chicago board of

education and the Chicago Teacher's Union. Under the terms of the

agreement, the board had agreed to provide employees with certain

benefits in cases where a teacher had been assaulted. However, the

board sought to avoid its promise by arguing that enforcement of

the agreement would be contrary to provisions the Workers'

Compensation Act, which provide that the Act is the exclusive

remedy for employee claims. See Ill. Rev. Stat. 1977, ch. 48, pars.

138.5, 138.11.

     This court rejected the board's arguments and determined that

the agreement at issue merely provided for supplemental benefits

for employees who were subjected to special dangers. Board of

Education, 86 Ill. 2d at 475. These benefits were contemplated

outside of and in addition to the benefits under the Workers'

Compensation Act. Finally, we concluded that the exclusive remedy

provision of the Workers' Compensation Act does not bar this type

of benefit. Board of Education, 86 Ill. 2d at 475.

     The common thread in Doyle, Kotecki and Board of Education is

that an employer has the power to waive those protections afforded

by the Workers' Compensation Act which are intended to benefit the

employer. An employer's decision to invoke or relinquish the

protections of the Workers' Compensation Act may involve

considerations of business judgment. See generally Geise, 159 Ill.

2d at 514. Therefore, we conclude that the appellate court in

Herington properly followed Doyle to its logical conclusion by

determining that the decision to forgo the protection of the

Workers' Compensation Act is within the realm of discretionary

business decisions made by an employer and does not violate the

terms or policy of the Act. Indeed, our decision that an employer

may relinquish the liability limitation set forth in Kotecki, by

contract, is consistent with Illinois public policy which favors

freedom of contract. See Electrical Contractors' Ass'n v. A.S.

Schulman Electric Co., 391 Ill. 333 (1945).

     We note that the dissenting justice in the appellate court

maintained that an alleged inequality of bargaining power between

All Tri-R and ADM would not permit the enforcement of a provision

in which All Tri-R purportedly waived the Kotecki cap. Disparity in

bargaining positions is often a factor considered in determining

whether a contract is unconscionable under the facts of a case.

Boatmen's National Bank v. Benton, 219 Ill. App. 3d 117 (1991). We

note that courts generally are reluctant to find a contract

unconscionable due to unequal bargaining power where both parties

are business entities. See, e.g., Dillman & Associates, Inc. v.

Capitol Leasing Co., 110 Ill. App. 3d 335 (1982). However, because

All Tri-R did not make such an argument before this court and

because nothing in the record at this early juncture in the

litigation supports the dissent's conclusion, we find it

inappropriate to address this issue further.

     In response to the first question certified by the circuit

court in the case at bar, we hold that Illinois law and public

policy do not prohibit the enforcement of a contract whereby an

employer agrees to remain liable for the full amount of damages

attributable to its own negligence, notwithstanding the Kotecki

cap.

                                    II

     Because we hold that public policy is not violated by an

employer's decision to waive the protection afforded by the

Workers' Compensation Act, we now consider the second question

certified by the circuit court:

          "whether a contract which states:

               `If [All Tri-R's] work under the order involves

          operations by [All Tri-R] on the premises of [ADM] or one

          of its customers, [All Tri-R] shall take all necessary

          precautions to prevent the occurrence of any injury to

          person or damage to property during the progress of such

          work and, except to the extent that any such injury or

          damage is due solely and directly to [ADM's] or its

          customer's negligence, as the case may be, [All Tri-R]

          shall pay [ADM] for all loss which may result in any way

          from any act or omission of [All Tri-R], its agents,

          employees or subcontractors[ ]'

     is an enforceable contract for contribution."

     The circuit court concluded that Herington controlled its

ruling, and therefore permitted ADM to amend its third-party

complaint to seek contribution from All Tri-R without the Kotecki

limit. The circuit court determined that the pertinent language of

the purchase order constituted more an agreement for contribution

than for indemnity, and held that the purchase order was not void

as being violative of section 1 the Indemnification Act (740 ILCS

35/0.01 (West 1994)). The appellate court agreed that Herington was

decided correctly, but reversed the circuit court on the basis that

the language of the purchase order violated section 1 of the

Indemnification Act and thus was void and unenforceable. 276 Ill.

App. 3d 1066.

     On appeal, ADM argues that paragraph 12 of the purchase order

does not violate the Indemnification Act because it provides that

All Tri-R agreed to pay for "all" liability stemming from "any act

or omission of [All Tri-R], its agents, employees or

subcontractors," i.e., its own negligent conduct. ADM acknowledges

that it is prohibited from seeking indemnity from All Tri-R, and

maintains that its third-party action does not seek to enforce

paragraph 12 as a promise to indemnify. ADM argues that its third-

party complaint clearly states that it is seeking contribution

consistent with the Contribution Act. ADM contends that All Tri-R

cannot rely on Kotecki to alter the terms of the contract which

show All Tri-R's intent to accept "all" financial responsibility

for its own negligence.

     In essence, ADM urges us to hold that if a determination of

relative liability between All Tri-R and ADM is made, and if the

percentage of fault attributed to All Tri-R's negligence equals a

sum greater than the $172,000 workers' compensation benefits, then

All Tri-R must pay the full amount of damages attributable to its

own negligence, notwithstanding Kotecki. ADM submits that paragraph

12 merely bars All Tri-R from attempting to limit its liability

because All Tri-R promised to "pay for all loss" stemming from its

own negligent acts, without qualification or reference to potential

limitations, such as the one set forth in Kotecki.

     All Tri-R responds that the language of paragraph 12 is an

improper indemnification agreement because the clause which reads

"except to the extent that any such injury or damage is due solely

and directly to [ADM's] or its customer's negligence" suggests that

if there is concurrent fault between All Tri-R and ADM, then the

financial burden of a loss shifts to All Tri-R. On appeal, All Tri-

R argues that the language of paragraph 12 is clearly an indemnity

agreement. We note that at the trial court level, All Tri-R argued

that the language of the purchase order is at best ambiguous. On

appeal, All Tri-R contends that the language of the purchase order

does not embrace the concept of pro rata fault, and therefore

cannot be construed as evidence of All Tri-R's intent to waive

Kotecki and be bound only by the Joint Tortfeasor Contribution Act.

740 ILCS 100/2(b) (West 1992) (allows one joint tortfeasor to

obtain damages from another tortfeasor in an amount "paid by him in

excess of his pro rata share" of the common liability).

     Section 1 of the Indemnification Act provides in relevant

part:

               "With respect to contracts or agreements, either

          public or private, for the construction, alteration,

          repair or maintenance of a building structure, *** every

          covenant, promise or agreement to indemnify or hold

          harmless another person from that person's own negligence

          is void as against public policy and wholly

          unenforceable." 740 ILCS 35/1 (West 1994).

     In order to evaluate the parties' contentions, we look to the

purpose of the Indemnification Act as well as cases in which the

Indemnification Act has been implicated or interpreted. We also

consider basic tenets of contract law and general principles

governing the right to contract.

     We note that while courts will not enforce an agreement which

is contrary to public policy (O'Hara v. Ahlgren, Blumenfeld &

Kempster, 127 Ill. 2d 333 (1989); see also Rome v. Upton, 271 Ill.

App. 3d 517 (1995); Holstein v. Grossman, 246 Ill. App. 3d 719

(1993)), a contract should not be deemed illegal unless it is

expressly contrary to the law or public policy (Rome, 271 Ill. App.

3d at 520). The laws and the public policy of the state permit and

require freedom of contracting between competent parties.

Electrical Contractors' Ass'n v. A.S. Schulman Electric Co., 391

Ill. 333 (1945), citing Zeigler v. Illinois Trust & Savings Bank,

245 Ill. 180 (1910). Whether a contract is contrary to public

policy depends on the peculiar facts and circumstances of each

case, as well as the language of the contract itself. O'Hara, 127

Ill. 2d at 341-42; Electrical Contractors' Ass'n, 391 Ill. at 339.

     On appeal, neither party argues that factual issues remain to

be determined with respect to the purchase order. The parties urge

this court to construe the provision at issue as a matter of law.

     This court has previously considered the purpose of the

Indemnification Act. See Davis v. Commonwealth Edison Co., 61 Ill.

2d 494 (1975); Capua v. W.E. O'Neil Construction Co., 67 Ill. 2d

255 (1977). In Davis, this court reasoned:

               "It is generally known that indemnity and hold-

          harmless agreements are most widely used in the

          construction industry. The legislature in enacting

          section 1 may have considered that the widespread use of

          these agreements in the industry may have removed or

          reduced the incentives to protect workers and others from

          injury. *** The statute would thwart attempts to avoid

          the consequences of liability and thereby insure a

          continuing motivation for persons responsible for

          construction activities to take accident prevention

          measures and provide safe working conditions." Davis, 61

          Ill. 2d at 498-99.

     The purposes of the Indemnification Act were again examined in

Capua, 67 Ill. 2d 255. There, sections 1 and 3 of the Act were

harmonized. Section 3 provides that the Act "does not apply to

construction bonds or insurance contracts or agreements." 740 ILCS

35/3 (West 1994). In Capua, this court confirmed the legislative

purpose set forth in Davis and further determined that section 3

deals with an additional protective interest--the interest of

construction workers, as well as members of the general public who

sustain construction related injuries, in supplemental sources of

compensation. Capua, 67 Ill. 2d at 260. Davis and Capua demonstrate

that as a matter of public policy, courts will not enforce promises

to indemnify contained in construction contracts because their

dominant aspect is the disincentive for the indemnitee to exercise

care. See Davis v. Commonwealth Edison Co., 61 Ill. 2d 494 (1975);

Capua v. W.E. O'Neil Construction Co., 67 Ill. 2d 255 (1977); see

also GTE North, Inc. v. Henkles & McCoy, Inc., 245 Ill. App. 3d

322, 329 (1993).

     As a general principle of contract law, statutes and laws in

existence at the time a contract is executed are considered part of

the contract. Larned v. First Chicago Corp., 264 Ill. App. 3d 697

(1994). It is presumed that parties contract with knowledge of the

existing law. Monroe Dearborn Ltd. Partnership v. Board of

Education, 271 Ill. App. 3d 457 (1995). Additionally, we recognize

that a construction of a contract which renders the agreement

enforceable rather than void is preferred. Schiro v. W.E. Gould &

Co., 18 Ill. 2d 538 (1960).

     At the time of the parties' contract in this case, ADM was

presumed to know that indemnity promises are void in violation of

public policy, and that a court would not enforce any contractual

language which would suggest such a promise. In fact, ADM concedes

that from the inception of the contract, any attempt to seek

indemnity from All Tri-R would be futile. Consequently, we cannot

conclude that paragraph 12 extinguished ADM's incentive to exercise

care with respect to the construction taking place on its premises.

Furthermore, it is not readily apparent that indemnity is the

dominant aspect of paragraph 12.

     We hold that under the facts and circumstances of this case,

paragraph 12 is not void as being violative of the Indemnification

Act. We note that ADM's third-party complaint expressly states that

it seeks contribution pursuant to the Contribution Act. Thus, the

policies of the Contribution Act are not offended by ADM's prayer

for relief because the goals of achieving comparative fault and

encouraging good-faith settlement remain intact.

     In summary, we hold that an employer may enter into a valid

and enforceable contractual agreement to waive the Kotecki

limitation on the employer's contribution liability. We further

hold that the purchase order in the case at bar is not void as

being violative of the Indemnification Act.

Certified questions answered;

                                         Appellate court affirmed in part

                                                    and reversed in part;

                                                  circuit court affirmed;

                                     cause remanded to the circuit court.

     JUSTICE BILANDIC took no part in the consideration or decision

of this case.